# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **Crime No.: 25-mj-269 (ZMF)** |
| **v.** : | |
| : | |
| **DETRICK GREENE,** : | |
| : | |
| **Defendant.** : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The government submits this memorandum in support of its request that the defendant be detained pending trial.

**I.   Introduction**

On November 18, 2025, this Court issued a criminal complaint charging the defendant with violating 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi) (Distribution of 100 grams or more of Fentanyl). At the defendant's initial appearance, on November 19, 20254, the government requested that he be detained because (1) he presents a danger to the community and (2) he presents a risk of flight. A detention hearing is scheduled for November 20, 2025.

**II.   Factual proffer of the evidence supporting the charge against the defendant.**

On November 12, 2025, an undercover agent (UC) arranged, by telephone, to purchase four ounces of fentanyl from the defendant. The deal was scheduled for the next day. On November 13, 2025, the defendant met the UC at 14th & Euclid Streets, N.W., Washington, D.C. The defendant provided to the UC two plastic bags, which were clear on one side and contained a white powdery substance. (These bags were like the bags of fentanyl the defendant had sold to

the UC on October 23, 30, and November 5, 2025.[1])  The UC then handed the defendant $8,000, the purchase price to which the UC and the defendant had previously agreed for four ounces of fentanyl.  This transaction was both video and audio recorded.

The two clear plastic bags received from the defendant weighed a total of approximately 124 grams.  The substance that the defendant sold to the UC was submitted to the DEA Mid-Atlantic lab, and it tested positive for 110.17 grams of N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide (fentanyl).

### III. Legal principles governing determination of pretrial detention.

The defendant poses both a danger to the community and a risk of flight.  And consideration of the statutorily prescribed factors demonstrates that no conditions of release would ensure the safety of the community and the appearance of the defendant.

**A.  There are two bases for holding a detention hearing in this matter.**

First, a detention hearing must be held when a person is charged with a "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act."  *See* 18 U.S.C. § 3142(f)(1)(C).  Here, the Defendant is charged with violating 21 U.S.C. § (b)(1)(B)(vi), which carries a maximum term of incarceration of 40 years.  *Id.*  A judicial determination that a defendant should be detained pending trial on the ground of community safety must be supported by clear and convincing evidence.  *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).  Inasmuch as the defendant is charged with a violation of the Controlled Substance Act, for which the maximum term of imprisonment is more than ten years, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community . . . ."  18 U.S.C. § 3142(e)(3)(A).

---

[1]   The drug analyses for all four transactions are attached as Exhibit A.

Second, there is a serious risk that the defendant will flee. 18 U.S.C. § 3142(f)(2)(A). When "risk of flight" is the basis for detention, the government must satisfy a preponderance of the evidence standard. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

**B.    The factors to be reviewed when determining pretrial detention**

The Bail Reform Act lists four factors that guide the Court's pretrial detention decision: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

**IV.   The defendant should be detained.**

Analysis of the factors set forth in 18 U.S.C. § 3142(g), demonstrates that the defendant presents both a danger to the community and a risk of flight.

**A.    The Nature and Circumstances of the Offense**

Selling fentanyl, as the defendant has done, is extremely dangerous to the community. Fentanyl is potent synthetic opioid drug; it is approximately 100 times more potent than morphine and 50 times more potent than heroin as an analgesic.[2] As discussed further below, here, the danger presented by the defendant selling fentanyl is not merely theoretical.

**B.    The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Defendant's Release**

As noted above, the defendant is charged with distributing fentanyl. But the charged offense alone does not come close to demonstrating the extent of the danger the defendant poses to the community. First, the defendant sold fentanyl to the UC on three other occasions:

---

[2]    In 2023 there were approximately 72,000 fentanyl related overdose deaths. NIH, DRUG OVERDOSE DEATHS: FACTS AND FIGURES (https://nida.nih.gov/research-topics/trends-statistics/overdose-death-rates#Fig2).

October 23, October 30, and November 5, 2025. The latter two sales contained an analogue of fentanyl, Carfentanil.[3]

Additionally, there is compelling evidence that one of the defendant's prior sales of fentanyl caused an individual's death: On September 26, 2025, an individual was found comatose, in a fetal position on the sidewalk in the 1400 Block of I Street NW. He was taken to George Washington University hospital, where, on September 28, 2025, he died from a fentanyl overdose. It appears that the defendant supplied the drugs that caused the individual's death.

The defendant's name and telephone number[4] were recovered from the victim's cellular telephone, and a witness has identified the defendant as the victim's source of illegal narcotics. The witness has seen digital cash transfers on the victim's telephone to the defendant's telephone. Additionally, text messages recovered from the victim's telephone, show that on the evening of on September 26, 2025, he contacted the defendant to arrange to purchase fentanyl. The victim and defendant agreed to meet at a local Red Lobster to conduct the drug transaction, and CCTV video footage recovered from the Red Lobster and adjacent businesses shows the defendant's and the victim's vehicles parked in the Red Lobster lot that evening. After the meeting, the victim sent text messages to the defendant's telephone asking about the drugs the defendant had provided. A short time later the victim was found unconscious on the sidewalk.[5]

---

[3] Carfentanil is a synthetic opioid approximately 10,000 times more potent than morphine and 100 times more potent than fentanyl. The presence of carfentanil in illicit U.S. drug markets is cause for concern, as the relative strength of this drug could lead to an increase in overdoses and overdose-related deaths, even among opioid-tolerant users. The presence of carfentanil also poses a significant threat to first responders and law enforcement personnel who may come in contact with this substance.

[4] This number was saved in the victim's telephone as belonging to "Detrick Greene." Furthermore, the UC used this number to contact the defendant several times to arrange drug deals.

[5] If defendant is charged with and convicted of disturbing narcotics resulting in death, he would face a mandatory minimum or 20 years' and a maximum of life incarceration. 21 U.S.C. 841(b)(1)(C).

C.  **The Weight of Evidence Against the Defendant**

The evidence against the defendant is overwhelming: (1) he sold drugs to a UC; (2) the sale was captured on both audio and video; (3) the defendant's telephone conversation with the UC to arrange the deal was recorded; (4) the defendant sold fentanyl to the same UC on three other occasions – all of those transactions were also recorded; (5) after being arrested and waiving his *Miranda*, rights the defendant admitted to possessing and selling fentanyl; and (5) during a search of the defendant's residence, agents recovered approximately 2 grams of Fentanyl, 156 grams of cocaine, 48 grams of crack cocaine, and 72 grams of methamphetamine.[6]

D.  **The History and Characteristics of the Defendant**

The defendant's history and characteristics demonstrate that he is both a danger to the community and a risk of flight. The history and characteristics of a person include, "whether, at the time of the current offense or arrest, the person was . . . on other release pending trial." 18 U.S.C. § 3142(g)(3)(B). At the time of the charged offense, the defendant was on release pending trial in a D.C. Superior Court case. In that matter, the defendant is also charged with narcotics offenses – including fentanyl. By engaging in similar criminal conduct, while on pretrial release in another matter, the defendant has demonstrated that the Court cannot be assured that, if released in this matter, the defendant would comply with his conditions of release. Defendant also has two prior convictions for illegally possessing a firearm and one for possessing narcotics with the intent to distribute.

Additionally, the defendant is a flight risk. He is facing a substantial period of incarceration – a minimum of five years and a maximum of 40 years' incarceration for the currently charged offense. Moreover, the defendant potentially faces charges carrying a

---

[6] The searches of defendant's residence and of another location with which he is associated also yielded 7 pistol magazines, loose rounds of ammunition, currency, and drug paraphernalia.

minimum of twenty years and a maximum of life imprisonment. *See* n. 5, *supra*. The specter of serving a lengthy period of incarceration gives the defendant a significant incentive to flee from prosecution. *See, e.g.*, *United States v. Brown*, 601 F. Supp. 3d 196, 203 (W.D. Ky. 2022) (among other factors, "heavy potential criminal penalties" demonstrate inclination to flee); *United States v. Riley*, 322 F. Supp. 3d 242, 244 (D. Mass. 2018) (among other factors, "face[ing] a substantial mandatory-minimum sentence" suggests that a defendant will not return to court); *United States v. Jones*, 143 F. Supp. 3d 78, 85 (W.D.N.Y. 2015), *aff'd* (Feb. 11, 2016) (among other factors, fact that [d]efendant would face a lengthy jail sentence if convicted" demonstrates risk of flight).

### V.     Conclusion

For the foregoing reasons, as well as those that will be set forth at a hearing on this motion, no condition or combination of conditions would assure the return of the defendant to all future court appearances and the safety of any person or the community. Accordingly, the government requests that the Court order that the defendant bee detained pending trial in this matter.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

*John Crabb Jr.*
John Crabb Jr.
Assistant United States Attorney
N.Y. Bar No. 2367670
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1794
john.d.crabb@usdoj.gov